Joseph R. Taylor (SBN 129933)
jtaylor@fkks.com
Tiffany R. Caterina (SBN 280159)
tcaterina@fkks.com
Chaitra G. Betageri (SBN 312760)
cbetageri@fkks.com
FRANKFURT KURNIT KLEIN + SELZ PC
2029 Century Park East, Suite 2500N
Los Angeles, California 90067
Telephone:   (310) 579-9600
Facsimile:   (310) 579-9650

Attorneys for Plaintiffs
JULIE MOSS and MARK MILLER

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| JULIE MOSS, an individual; and MARK MILLER, an individual, <br><br> Plaintiffs, <br><br> v. <br><br> LISA DAWN MILLER, an individual; RON MILLER SONGBOOK PUBLISHING LLC, a California limited liability company; RON MILLER LEGACY SONGTRUST LLC, a California limited liability company, SONY MUSIC PUBLISHING (US) LLC, a Delaware limited liability company; and DOES 1-10, <br><br> Defendants. | Case No.  2:23-cv-07424 <br><br> **COMPLAINT FOR:** <br><br> **(1)  DECLARATORY RELIEF RE: INVALID COPYRIGHT TERMINATION NOTICES** <br><br> **(2)  DECLARATORY RELIEF RE: DIRECT PAYMENT** <br><br> **(3)  ACCOUNTING** <br><br> **(4)  CONSTRUCTIVE TRUST** <br><br> **DEMAND FOR JURY TRIAL** |

Frankfurt Kurnit Klein + Selz PC
2029 Century Park East, Suite 2500N
Los Angeles, California 90067
P (310) 579-9600

Plaintiffs Julie Moss ("**Julie**")[1] and Mark Miller ("**Mark**;" together with Julie, "**Plaintiffs**" ), by and through their undersigned attorneys, complain against defendants Lisa Dawn Miller ("**Lisa**"), Ron Miller Songbook Publishing LLC ("**Songbook**"), Ron Miller Legacy Songtrust LLC ("**Songtrust**"), Sony Music Publishing (US) LLC ("**Sony**"), and Does 1 through 10 (collectively, "**Defendants**") as follows:

## NATURE OF THE ACTION

1.      Ron Miller ("**Ron**") was a prolific American songwriter and record producer who, among other efforts, wrote for Motown artists in the 1960s and 1970s and attained numerous Top 10 hits, including "For Once in My Life," "Touch Me in the Morning," and "Heaven Help Us All."  Ron's songs have been recorded and performed by some of the most popular artists of all time, including Stevie Wonder, Diana Ross, and even Justin Bieber.

2.      Ron had two children—Julie and Mark—from his first marriage.  With his second wife, Aurora Miller ("**Aurora**"), Ron had two more children, Lisa and Angel Miller ("**Angel**").  Aurora also had two children from a previous marriage— Debbie and Gary—who are half-siblings to Lisa and step-siblings to Julie and Mark. Ron and Aurora separated in 1971 and, while they never divorced, Ron spent the final years of his life with his companion Janis Waller.

3.      On July 23, 2007, Ron died in Santa Monica, California.  At the time of Ron's death, by operation of law, Ron's estranged wife, Aurora, became entitled to a 50% interest in Ron's copyright termination interest under the 1976 Copyright Act and Ron's four biological children—Julie, Mark, Lisa, and Angel—each became entitled to a 12.5% interest in Ron's copyright termination interest under the 1976 Copyright Act.

---

[1] First names are used throughout solely for ease of reference because many of the parties share a common last name.

Frankfurt Kurmit Klein + Selz PC
2029 Century Park East, Suite 2500N
Los Angeles, California 90067
P (310) 579-9600

4.      That was not good enough for Lisa who wanted complete control over Ron's legacy to bolster her own fledgling music career.  Since Lisa did not possess a controlling majority of the copyright termination interest under the 1976 Copyright Act, Lisa launched a scheme to usurp control of Aurora's 50% interest to Lisa's own personal benefit.  First, Lisa exerted undue influence over an aging and sick Aurora to coerce Aurora into executing notices of copyright termination.  Then, Plaintiffs are informed and believe, and based thereon allege, that as Aurora's health continued to decline, Lisa began forging Aurora's signature on notices of copyright termination.  By the time Aurora became incapacitated due to illness, Lisa was acting entirely on her own to issue notices of copyright termination in Aurora's name.  When Aurora lapsed into a coma on March 20, 2016, Lisa kept her mother alive in a vegetative state against doctor's advice and sibling's wishes.  While Aurora was in a coma, Lisa continued to issue notices of copyright termination in Aurora's name.

5.      Lisa immediately began to exploit, to her own sole benefit, the ill-gotten reverted copyrights in Ron's songs based upon the invalid and fraudulent notices of copyright termination.  Lisa launched the eponymous LDM Publishing to market and brand Ron's song catalogue alongside Lisa's own original songs on a website emblazoned with Lisa's image.  Eventually Lisa signed a publishing deal with Defendant Sony, from which Julie and Mark have not received a penny.  Despite Sony's stated willingness to provide Julie and Mark with a copy of the agreement and account to Julie and Mark directly, Lisa has blocked any transparency and payment to statutory heirs Julie and Mark.  Lisa maintains she must be in complete and total control to the exclusion of the other statutory heirs.

6.      This action seeks to end Lisa's abuses and usurpation, and return rightful control of Ron's termination interest to each of his four children equally as intended under the 1976 Copyright Act.

Frankfurt Kurnit Klein + Selz PC

2029 Century Park East, Suite 2500N
Los Angeles, California 90067
P (310) 579-9600

1

## PARTIES

2   7.   Plaintiff Julie Moss is, and at all relevant times mentioned herein was,

3   an individual residing in London, England.

4   8.   Plaintiff Mark Miller is, and at all relevant times mentioned herein was,

5   an individual residing in Los Angeles County, California.

6   9.   Defendant Lisa Dawn Miller is, and at all relevant times mentioned

7   herein was, an individual residing in Los Angeles County, California.

8   10.   Defendant Ron Miller Songbook Publishing LLC is a California

9   limited liability company organized on June 16, 2017 by Defendant Lisa Dawn

10   Miller, its sole Managing Member, and existing under the laws of the state of

11   California, with its principal place of business in Tarzana, California.  Upon

12   information and belief, Songbook is doing business as LDM Publishing.

13   11.   Defendant Ron Miller Legacy Songtrust LLC is a limited liability

14   company organized on November 16, 2021 by Defendant Lisa Dawn Miller, its sole

15   Managing Member, and existing under the laws of the state of California, with its

16   principal place of business in Tarzana, California.  Upon information and belief,

17   Songtrust is doing business as LDM Publishing.

18   12.   Defendant Sony Music Publishing (US) LLC, formerly Sony/ATV

19   Music Publishing, is, and at all relevant times mentioned herein was, a Delaware

20   limited liability company with its principal place of business in New York, New

21   York.

22   13.   Plaintiffs are unaware of the true names and capacities of the

23   defendants sued herein as Does 1 through 10, inclusive, and therefore sue these

24   defendants by such fictitious names.  Plaintiffs are informed and believe, and on that

25   basis allege, that each of the fictitiously named defendants is liable to Plaintiffs in

26   some manner for the causes of action alleged herein.  Plaintiffs will seek leave to

27   amend this Complaint to allege the true names and capacities of the fictitiously

28   named defendants when their identifies have been ascertained.

Frankfurt Kurmit Klein + Selz PC
2029 Century Park East, Suite 2500N
Los Angeles, California 90067
P (310) 579-9600

**JURISDICTION AND VENUE**

14.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1338(a) (action arising under the Copyright Act); 28 U.S.C. § 1331 (federal question); and 28 U.S.C. § 1367 (supplemental jurisdiction).

15.     This Court has personal jurisdiction over each of the Defendants because:  (a) each of Defendants Lisa, Songbook, and Songtrust are domiciled in the state of California, (b) Defendant Sony regularly conducts business and has extensive contacts in this jurisdiction and the state of California, and (c) a substantial part of the events giving rise to the claims set forth herein occurred in the state of California.

16.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because Defendants are subject to the personal jurisdiction of this Court and a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this district.

**FACTUAL ALLEGATIONS**

**The Copyright Termination Interest**

17.     In 1976, Congress passed a new Copyright Act (the "**1976 Copyright Act**").  One purpose of the 1976 Copyright Act was to preserve an author's ability to renegotiate the terms of long-term copyright licenses following an increase in the value of the copyrighted asset.  Essentially, the law gave authors the ability to terminate long-term licenses of their works in order to renegotiate or enter into new deals based upon the increased value of their works.

18.     Accordingly, under the 1976 Copyright Act (17 U.S.C. §§ 203 and 304(c)):

a.     for any copyright license executed before January 1, 1978, an author has an unalienable right to terminate a copyright license:  (i) fifty-six (56) years from the date copyright was originally secured, or (ii) beginning on January 1, 1978, whichever is later; and,

b.      for any copyright license executed on or after January 1, 1978, an author has an unalienable right to terminate a copyright license:  (i) after thirty-five (35) years from the date of the license, or (ii) if the license covers the right of publication of the work, after thirty-five (35) years from the date of publication of the work or after forty (40) years from the date of the license, whichever term ends earlier (collectively, the "**Copyright Termination Interest**").

19.    In the event an author dies prior to the author's ability to exercise their Copyright Termination Interest, the author's Copyright Termination Interest is owned, and may be exercised, by the author's statutory heirs.  Where an author is survived by a widow and children, the widow owns 50% of the Copyright Termination Interest and the other 50% of the Copyright Termination Interest is divided equally among the author's surviving children.  In the event the author's widow also dies prior to exercising the Copyright Termination Interest, the entire Copyright Termination Interest is divided equally among the author's surviving children.

20.    To effectuate the termination of a copyright license, persons holding a majority of the Copyright Termination Interest must serve notices of termination on the copyright licensee within a specific timeframe (permitting notices to be served up to 10 years in advance of the actual effective date of the termination) and must record the notice with the Copyright Office before the effective date of the termination.

21.    In the event of a valid termination under the 1976 Copyright Act, all the rights covered by the terminated copyright license revert to the Copyright Termination Interest holders according to their proportionate shares (the "**Reverted Copyrights**").  Importantly, when a valid termination notice is served and recorded in advance of the effective date of the termination, the Reverted Copyrights are apportioned among the Copyright Termination Interest holders according to their shares of the Copyright Termination Interest as of the date of the notice, not the

1  effective date of the termination.  For example, if a termination notice is served

2  while the author's widow is alive, but the termination does not become effective

3  until after the author's widow is dead, the widow's estate would be entitled to 50%

4  of the Reverted Copyrights (instead of those rights being equally divided among the

5  author's surviving children).

6  **Lisa Usurps Control Of The Copyright Termination Interest**

7       22.    On July 23, 2007, Ron died in Santa Monica, California.

8       23.    As of Ron's death, by operation of Sections 203 and 304(c) of the 1976

9  Copyright Act, Aurora became entitled to exercise 50% of the Copyright

10  Termination Interest and each of Julie, Mark, Lisa, and Angel became entitled to

11  exercise 12.5% of the Copyright Termination Interest.

12       24.    At the time of Ron's death, Aurora was 74 years old and in declining

13  health.

14       25.    Plaintiffs are informed and believe, and based thereon allege, that Lisa

15  redirected all royalties from Ron's estate due and owing to Aurora to go to Lisa,

16  such that Aurora became financially dependent on Lisa.

17       26.    Unable to act unilaterally to exercise the Copyright Termination

18  Interest with a 12.5% share only, upon information and belief, Lisa used her position

19  of trust and confidence as Aurora's daughter and primary financial caretaker to

20  unduly influence a vulnerable Aurora who was of advanced age and declining

21  health.

22       27.    From 2009 to 2012, Lisa unduly influenced Aurora to sign the

23  following:

24       a.    the Notice of Termination dated August 27, 2009, attached

25  hereto and incorporated herein as **Exhibit 1**, sent to EMI Music Publishing Inc. and

26  EMI Blackwood Music Inc. purporting to terminate the license relating to the songs

27  "After The Ball," "Are You Free," "Can't We Try," "Climb Up On That Mountain,"

28  "I Need A Man," I Won't Remember Ever Loving You," "If I Was A Man," "If You

Frankfurt Kurmit Klein+Selz $_{PC}$
2029 Century Park East, Suite 2590N
Los Angeles, California 90067
P (310) 579-9600

Take Away The Pain Until The Morning," It Hurts So Nice," "Johnny Doesn't Love Here Anymore," "Latin Lovers," "Nunca He Ido A Mi," "Over Me," "People Don't Come True," "Rainbows," "Richie's Song," "The Last Song," "To Be Or Not To Be," "Used To Be," "When Mama Gets The Night Out Of Her Eyes," "You Moved A Mountain," and "You're Home"  ("**Termination Notice 1**");

       b.    the Notice of Termination dated September 30, 2009, attached hereto and incorporated herein as **Exhibit 2**, sent to EMI Music Publishing Inc. and EMI Blackwood Music Inc. purporting to terminate the license relating to the song "Bedtime For Toys" ("**Termination Notice 2**");

       c.    the Notice of Termination dated July 7, 2010, attached hereto and incorporated herein as **Exhibit 3**, sent to EMI Music Publishing Inc. and EMI Blackwood Music Inc. purporting to terminate the license relating to the songs "A Little Bit Crazy For Me," "A Part Of Me," "A Warmer World," "A Woman's Place," "An Affair Of The Heart," "And There You Were," "Ask Me What My Name Is," "Bedtime For Toys," "Better Men Than Me," "Close Your Eyes," "Give Your Heart A Chance," "I'm In Love," "It Rained Again Today," "It Wasn't My Turn," "Let Love Be," "Like," "Little Miss Loser," "Little People's Gold," "Love's Not A Nursery Rhyme," "Mama Llama," Maybe Today," "Mercy! Mercy! Mercy!," "Mister Sad," "My Kind Of Music," "My Way," "No Bad Habits But Joe," "Poor Japanese Boy," "Shall I Try Again," "Shy Girl," "So Glad They Stuck Around," "Something For My Heart," "Takes All Kinds Of People," "The Bitter And The Sweet," "The Devil In Me," "The Prime Of My Life," "The Smile On Your Face," "The World Belongs To You," "To Every Young Heart," "Two Songs," "Two Strangers," "Waitin' Out The Blue," "When I've Forgotten How To Love You," "Where's The Wine," "Who But A Fool," "Won't You Do It Anyway," "You May Never Pass This Way Again," "You Who Loves Me," "You've Got To Give," and "Your Heart Will Do The Rest" ("**Termination Notice 3**");

       d.    the Notice of Termination dated August 15, 2010, attached

Frankfurt Kurmit Klein+Selz PC
2029 Century Park East, Suite 2500N
Los Angeles, California 90067
P (310) 579-9600

hereto and incorporated herein as **Exhibit 4**, sent to EMI Music Publishing Inc. and EMI Blackwood Music Inc. purporting to terminate the license relating to the songs "Gin And Vermouth" and "Hello, Broadway" ("**Termination Notice 4**");

   e. the Notice of Termination dated December 1, 2010, attached hereto and incorporated herein as **Exhibit 5**, sent to EMI Music Publishing Inc. and EMI Blackwood Music Inc. purporting to terminate the license relating to the songs "Am I Too Late For Love," "Big City Babies Don't Cry," "Is It Him Or Me," and "Miss Hollywood"  ("**Termination Notice 5**");

   f. the Notice of Termination dated January 3, 2011, attached hereto and incorporated herein as **Exhibit 6**, sent to EMI Music Publishing Inc. and EMI Blackwood Music Inc. purporting to terminate the license relating to the songs "Boys Will Be Boys," "Mine For A Moment," "One Night In New York," "Treat Me Like A Lady," and "We'll Still Have A Silver Lining (On Our Golden Cloud)" ("**Termination Notice 6**");

   g. the Notice of Termination dated March 8, 2011, attached hereto and incorporated herein as **Exhibit 7**, sent to EMI Music Publishing Inc. and EMI Blackwood Music Inc. purporting to terminate the license relating to the songs "Hand In Hand" and "The Bigger Your Heart Is (The Harder You'll Fall)" ("**Termination Notice 7**");

   h. the Notice of Termination dated April 1, 2011, attached hereto and incorporated herein as **Exhibit 8**, sent to EMI Music Publishing Inc. and EMI Blackwood Music Inc. purporting to terminate the license relating to the songs "Down To Earth," "Easy Come Easy Go," "Goin'," "Had You Been Around," "Look World," "On The Next Warm Day," and "You Broke My Heart In Three" ("**Termination Notice 8**");

   i. the Notice of Termination dated May 16, 2011, attached hereto and incorporated herein as **Exhibit 9**, sent to EMI Music Publishing Inc. and EMI Blackwood Music Inc. purporting to terminate the license relating to the songs

1  "Anything You Wanna Do," "Every Step Of The Way," "Forbidden Fruit," and

2  "Giving Myself Away" ("**Termination Notice 9**");

3            j.       the Notice of Termination dated July 15, 2011, attached hereto

4  and incorporated herein as **Exhibit 10**, sent to EMI Music Publishing Inc. and EMI

5  Blackwood Music Inc. purporting to terminate the license relating to the songs

6  "Don't Knock It," "For Once In My Life," "Forty-Five Seconds Of Love," "It

7  Matters Not To Me," "It's More Than Ten-Per-Cent With Me," "Move Over

8  World," "Play For Pay," and "The Way He Is" ("**Termination Notice 10**");

9            k.       the Notice of Termination dated December 14, 2011, attached

10  hereto and incorporated herein as **Exhibit 11**, sent to EMI Music Publishing Inc.

11  and EMI Blackwood Music Inc. purporting to terminate the license relating to the

12  songs "Freddie," "Give 'Em The Roses," "Hey, Mama," "How You Would Like To

13  See Broadway," "Hungry (Hungary)," "I've Never Been To Me (Female Version),"

14  "I've Never Been To Me (Male Version)," "I Can't Go Home Again," "If I Could

15  See Myself," "If You Won't Let Me Walk On The Water," "It Ain't Easy Comin'

16  Down," "It's Really Nice To Be In Love Again," "Lullaby," and "On My Way To

17  You," "Razzle Dazzle"  ("**Termination Notice 11**");

18            l.       the Notice of Termination dated October 1, 2012, attached hereto

19  and incorporated herein as **Exhibit 12**, sent to EMI Music Publishing Inc. and EMI

20  Blackwood Music Inc. purporting to terminate the license relating to the songs "For

21  Once In My Life," "A Place In The Sun," and "Yester-Me, Yester-You, Yesterday"

22  ("**Termination Notice 12**"); and,

23            m.       the Notice of Termination dated October 8, 2012, attached hereto

24  and incorporated herein as **Exhibit 13**, sent to EMI Music Publishing Inc. and EMI

25  Blackwood Music Inc. purporting to terminate the license relating to the songs

26  "Don't Knock It," "Fancy Passes," "Kickin' Stones," "Lilac Love," "Little Boy

27  Lost," "Make A Circle," "Play For Pay," "The Days Of Burlesque," "The Way He

28  Is," "What A Day," and "You Sweeten Each Like With A Kiss" ("**Termination**

Frankfurt Kurnit Klein +Selz PC
2029 Century Park East, Suite 2500N
Los Angeles, California 90067
P (310) 579-9600

10
COMPLAINT

**Notice 13**").

28.     In 2013, Aurora's health continued to deteriorate extremely.  Aurora's advanced diabetes caused peripheral arterial disease, which required hospitalization and amputation of Aurora's leg.  Upon information and belief, Aurora was in constant, severe pain during such hospitalization, relied on heavy doses of morphine for some relief, and lacked the capacity to understand, consent to, or execute legal documents.

29.     From 2013 to 2015, Lisa unduly influenced Aurora to sign, and while Aurora was hospitalized, medically incapacitated, and unable to understand, consent to, or execute legal documents, Lisa executed, purportedly on behalf of Aurora, the following:

a.     the Notice of Termination dated June 5, 2013, attached hereto and incorporated herein as **Exhibit 14**, sent to EMI Music Publishing Inc. and EMI Blackwood Music Inc. purporting to terminate the license relating to the songs "Some Day At Christmas (Someday At Christmas)," "Sittin' In The Middle Of Nowhere," and "Kickin' Stones" ("**Termination Notice 14**");

b.     the Notice of Termination dated June 6, 2013, attached hereto and incorporated herein as **Exhibit 15**, sent to EMI Music Publishing Inc. and EMI Blackwood Music Inc. purporting to terminate the license relating to the songs "It Happens Every Time," "Walk Down That Road," "Is Anyone Here Goin' My Way?," and "Lost" ("**Termination Notice 15**");

c.     the Notice of Termination dated June 11, 2013, attached hereto and incorporated herein as **Exhibit 16**, sent to EMI Music Publishing Inc. and EMI Blackwood Music Inc. purporting to terminate the license relating to the songs "Chivalry's Not Dead," "Goodbye Manhattan," "Silent Love," "The Touch Of Time," "Twinkle Twinkle Little Me," "Walk In Silence," "You're Gonna Love Me Baby," "Down To Earth," "Easy Come Easy Go," "Goin'," "Had You Been Around," "Look World," "On The Next Warm Day," and "You Broke My Heart In

Three" ("**Termination Notice 16**");

        d.    the Notice of Termination dated June 18, 2013, attached hereto and incorporated herein as **Exhibit 17**, sent to EMI Music Publishing Inc. and EMI Blackwood Music Inc. purporting to terminate the license relating to the songs "The Miracles Of Christmas," "Travelin' Man," "You Could Never Love Him (Like I Love Him)," and "You Sweeten Each Lie With A Kiss" ("**Termination Notice 17**");

        e.    the Notice of Termination dated June 20, 2013, attached hereto and incorporated herein as **Exhibit 18**, sent to EMI Music Publishing Inc. and EMI Blackwood Music Inc. purporting to terminate the license relating to the songs "What A Day," "The Miracles Of Christmas," and "The Days Of Burlesque" ("**Termination Notice 18**");

        f.    the Notice of Termination dated August 15, 2013, attached hereto and incorporated herein as **Exhibit 19**, sent to EMI Music Publishing Inc. and EMI Blackwood Music Inc. purporting to terminate the license relating to the songs "A Warm Little Home On The Hill," "Everyone's A Kid At Christmas Time," "One Little Christmas Tree," and "The Day That Love Began" ("**Termination Notice 19**");

        g.    the Notice of Termination dated December 1, 2013, attached hereto and incorporated herein as **Exhibit 20**, sent to EMI Music Publishing Inc. and EMI Blackwood Music Inc. purporting to terminate the license relating to the songs "Gotta See Jane" and "Green Grow The Lilacs" ("**Termination Notice 20**");

        h.    the Notice of Termination dated June 15, 2014, attached hereto and incorporated herein as **Exhibit 21**, sent to EMI Music Publishing Inc. and EMI Blackwood Music Inc. purporting to terminate the license relating to the song "Around And Around" ("**Termination Notice 21**");

        i.    the Notice of Termination dated July 15, 2014, attached hereto and incorporated herein as **Exhibit 22**, sent to EMI Music Publishing Inc. and EMI

Blackwood Music Inc. purporting to terminate the license relating to the song "Ain't It A Shame" ("**Termination Notice 22**");

j.      the Notice of Termination dated December 2, 2014, attached hereto and incorporated herein as **Exhibit 23**, sent to EMI Music Publishing Inc. and EMI Blackwood Music Inc. purporting to terminate the license relating to the song "An Old Fashioned Man" ("**Termination Notice 23**");

k.      the Notice of Termination dated January 2, 2015, attached hereto and incorporated herein as **Exhibit 24**, sent to EMI Music Publishing Inc. and EMI Blackwood Music Inc. purporting to terminate the license relating to the song "Muck-Arty-Park" ("**Termination Notice 24**");

l.      the Notice of Termination dated April 1, 2015, attached hereto and incorporated herein as **Exhibit 25**, sent to EMI Music Publishing Inc. and EMI Blackwood Music Inc. purporting to terminate the license relating to the songs "Life Never Brings A Bottle To The Party" and "Tell Me, What's He Got (That I Ain't Got)" ("**Termination Notice 25**");

m.      the Notice of Termination dated April 11, 2015, attached hereto and incorporated herein as **Exhibit 26**, sent to EMI Music Publishing Inc. and EMI Blackwood Music Inc. purporting to terminate the license relating to the song "I Believe In Love" ("**Termination Notice 26**"); and,

n.      the Notice of Termination dated April 14, 2015, attached hereto and incorporated herein as **Exhibit 27**, sent to EMI Music Publishing Inc. and EMI Blackwood Music Inc. purporting to terminate the license relating to the song "Flaming Agnes"  ("**Termination Notice 27**").

30.     In October 2015, Aurora's disease continued to worsen, and her other leg was amputated, resulting in a weeks-long hospitalization.  Upon information and belief, Aurora was in constant, severe pain during such hospitalization, relied on heavy doses of morphine for some relief, and lacked the capacity to understand, consent to, or execute legal documents.

31.     In October 2015, Lisa unduly influenced Aurora to sign, and while Aurora was hospitalized, medically incapacitated, and unable to understand, consent to, or execute legal documents, Lisa executed, purportedly on behalf of Aurora, the following:

a.      the Notice of Termination dated October 2, 2015, attached hereto and incorporated herein as **Exhibit 28**, sent to EMI Music Publishing Inc. and EMI Blackwood Music Inc. purporting to terminate the license relating to the songs "I've Never Been A Woman Before," "City Girls," "Cooperatin' Nature," "Men," "Would I Lie To You," "Generation (Take A Look At Life)," and "Rainbows" ("**Termination Notice 28**"); and,

b.      the Notice of Termination dated October 10, 2015, attached hereto and incorporated herein as **Exhibit 29**, sent to EMI Music Publishing Inc. and EMI Blackwood Music Inc. purporting to terminate the license relating to the song "My Name Isn't Cherry" ("**Termination Notice 29**").

32.     In February 2016, due to complications from her leg amputations, Aurora was hospitalized again.  On March 15, 2016, while Aurora was hospitalized, medically incapacitated, and unable to understand, consent to, or execute legal documents, Lisa executed, purportedly on behalf of Aurora:

a.      the Notice of Termination, attached hereto and incorporated herein as **Exhibit 30**, sent to EMI Music Publishing Inc. and EMI Blackwood Music Inc. purporting to terminate the license relating to the songs "Daddy's Soliloquy," "Big Business," "The Lord Wants You To Dance," "The Things I Should Have Said," and "Outside O' That You're Doing Fine" ("**Termination Notice 30**");

b.      the Notice of Termination, attached hereto and incorporated herein as **Exhibit 31**, to EMI Music Publishing Inc. and EMI Blackwood Music Inc. purporting to terminate the license relating to the songs "Sam, The Washing Machine Man," "Scrubbin," "The Negotiation," "To Get The Ticket For You," "Well I Uh," "What'll They Think Of Next," "You'll Never Be Younger Than Me,"

Frankfurt Kurmit Klein+Selz PC

2029 Century Park East, Suite 2500N
Los Angeles, California 90067
P (310) 579-9600

and "Whenever You Find Yourself" ("**Termination Notice 31**");

      c.     the Notice of Termination, attached hereto and incorporated herein as **Exhibit 32**, to EMI Music Publishing Inc. and EMI Blackwood Music Inc. purporting to terminate the license relating to the songs "Just Another Morning," "Keep On Sockin' It To Me," "Something To Believe In," and "Sure Is A Lotta Woman" ("**Termination Notice 32**");

      d.     the Notice of Termination, attached hereto and incorporated herein as **Exhibit 33**, to EMI Music Publishing Inc. and EMI Blackwood Music Inc. purporting to terminate the license relating to the songs "Filthy Rich," "Fund Raising," "Good Old New Orleans," "Harry's Dilemma," "He's Home," "I Can See," "I Needed To Believe," "I Wouldn't Change A Thing," "I'll Be The Road," "I'll Take George," "If I Could Touch Your Pain," "It Takes A Hell Of A Man To Say No," "King Of The Hill," "Let's Go Home," "Little People," "Magic Man," "Oh Music, Sweet Music," "One Out Of Every Six," "Rainbows," Satchmo," "Take Me To You," "Thank You Al Capone," "The Best Part Of Me," "Cathouse Blues," "The Funky Butt Stomp," "The New Faith Part 1," "The New Faith Part 2," "True Love Is The Mother Of Us All," "We Knew," "We're Going All The Way," "What Happens To People," "When Johnny Came Marching Home," "When You're In Love," "Will I Still Be Me," "Wasn't I A Good Time," "You Loved Away The Pain," "You're Not Alone," "You're The Last Train For Tomorrow," and "I Feel Love" ("**Termination Notice 33**"); and,

      e.     the Notice of Termination, attached hereto and incorporated herein as **Exhibit 34**, to EMI Music Publishing Inc. and EMI Blackwood Music Inc. purporting to terminate the license relating to the songs "Goodness Don't Come Easy When You're Bad," "I Got Religion," "Hungry," "Spread Joy," "Lottie's Purification," "We'll Let The People Decide," "One More Step," "People Make Me Cry," "I Don't Want To Do It Alone No More," "Daddy's Decision," "Don't Touch That Dial," "You're Home," and "Finale (Daddy Goodness)" ("**Termination Notice**

Frankfurt Kurnit Klein + Selz PC

2029 Century Park East, Suite 2500N
Los Angeles, California 90067
P (310) 579-9600

1  **34**").

2       33.    On March 16, 2016, while Aurora was hospitalized, medically

3  incapacitated, and unable to understand, consent to, or execute legal documents,

4  Lisa executed, purportedly on behalf of Aurora:

5          a.    the Notice of Termination, attached hereto and incorporated

6  herein as **Exhibit 35**, to EMI Music Publishing Inc. and EMI Blackwood Music Inc.

7  purporting to terminate the license relating to the songs "I Feel Love," "I'll Take

8  George," "A Case Of Spring," and "When You're In Love" ("**Termination Notice**

9  **35**"); and,

10          b.    the Notice of Termination, attached hereto and incorporated

11  herein as **Exhibit 36**, to EMI Music Publishing Inc. and EMI Blackwood Music Inc.

12  purporting to terminate the license relating to the songs "Angel Up My Sleeve,"

13  "Closet Country Queen," "Dixieland," "Fly Away," "Fundraising," "Gonna Miss

14  Mississippi," "I Ain't No Who' No' Mo," "I Just Don't Have The Time," "Love Me

15  With Your Eyes," "Moonlight On The River," "Nothing To Believe," "Red Beans

16  And Rice," "Riverboat Annie," "Run Against The Wind," "Someone Believing In

17  Me," "Speak Up America," "The Big Rodeo In The Sky," "The Book Of Life,"

18  "The Final Decision," "The First Time," "The Month Of April," "The Season For

19  Love," "Touch," "We're Always Saying Goodbye," "If You Try," "I'm Gonna

20  Rock You Outta My Life," "Take Me To You," "Syncopated Lady," "To Love

21  You," "We're Free," "Where Did I Go," and "You're A Part Of Me Now"

22  ("**Termination Notice 36**").

23       34.    Upon information and belief, on March 17, 2016, it became evident

24  that Aurora was nearing death.  Therefore, on March 17, 2016, in a rush to execute

25  as many notices of termination in Aurora's name as possible, Lisa executed,

26  purportedly on behalf of Aurora, a Notice of Termination, attached hereto and

27  incorporated herein as **Exhibit 37**, to EMI Music Publishing Inc. and EMI

28  Blackwood Music Inc. purporting to terminate the license relating to one of Ron's

Frankfurt Kurnit Klein + Selz PC

2029 Century Park East, Suite 2500N
Los Angeles, California 90067
P (310) 579-9600

16

most popular songs, "Heaven Help Us All" before the statutory time to do so under the 1976 Copyright Act (the "**Premature Termination Notice**").

35.    On March 18, 2016, Aurora was discharged from the hospital, but her health continued to deteriorate, and two days later, on March 20, 2016, Aurora lapsed into a coma from which she never awoke.

36.    Upon information and belief, doctors explained to the family that Aurora was essentially brain dead, would not recover, and was being kept alive only by machines.  Upon information and belief, doctors advised the family to turn off the machines that were keeping Aurora alive.

37.    Upon information and belief, Lisa refused to turn off the machines keeping Aurora alive, against the advice of Aurora's doctors, Aurora's stated end-of-life wishes, and the desires of Aurora's other children.  Upon information and belief, Lisa threatened to sue her half-siblings, Gary and Debbie, if they attempted to interfere with Lisa's desire to keep Aurora alive in a vegetative state.

38.    While Aurora was in a coma, on April 22, 2016, the earliest possible date under the 1976 Copyright Act that the Copyright Termination Interest could be exercised for "Heaven Help Us All," Lisa executed, purportedly on behalf of Aurora, another Notice of Termination, attached hereto and incorporated herein as **Exhibit 38**, to EMI Music Publishing Inc. and EMI Blackwood Music Inc. purporting to terminate the license for "Heaven Help Us All" ("**Termination Notice 37**").  Then, on April 23, 2016, Lisa executed, purportedly on behalf of Aurora, yet another Notice of Termination, attached hereto and incorporated herein as **Exhibit 39**, to EMI Music Publishing Inc. and EMI Blackwood Music Inc. for "Heaven Help Us All" ("**Termination Notice 38**;" together with Termination Notice 1-37, the "**Invalid Termination Notices**")

39.    Upon information and belief, on June 15, 2016, Lisa decided to turn off the machines keeping Aurora alive.

40.    On June 15, 2016, Aurora died.  As of Aurora's death, each of Julie,

Mark, Lisa, and Angel were entitled to exercise 25% of the Copyright Termination Interest, such that Lisa cannot exercise the Copyright Termination Interest without the agreement of at least two of Julie, Mark, or Angel.

**Lisa Self-Interested Dealings**

41.     As the purported termination dates under the Invalid Termination notices became "effective," Lisa immediately assumed complete control of the purported Reverted Copyrights from the Invalid Termination Notices and exploited them to her sole benefit.

42.     In or around April 2019, Lisa began releasing her own re-recordings of Ron's songs, including "The Things I Should Have Said" and "A Place In The Sun."

43.     On or around March 11, 2021, Lisa announced the launch of "LDM Publishing"—named using Lisa's own initials—to market and brand the Reverted Rights alongside Lisa's own original songs.  Upon information and belief, LDM Publishing is a fictitious business name that is not registered in the state of California.

44.     On or around May 2, 2021, Lisa announced that she would host a podcast showcasing Ron's songs called "One In A Million" available on iTunes, Spotify, and Lisa's website.

45.     On or around July 12, 2021, Lisa gave an interview in which she stated: "I am taking over control of the US rights to the entire catalogue."  In the same interview, Lisa announced she was developing a Broadway show based upon Ron's catalogue called "For Once In My Life."

46.     On or around August 12, 2021, Lisa publicly announced that LDM Publishing controlled the Reverted Copyrights, and represented to third parties that Lisa could exploit the Reverted Copyrights, for 130 of Ron's songs, including "For Once In My Life."  Lisa further announced that she was producing and recording songs from Ron's catalogue.

47.     On or around January 20, 2022, Lisa publicly announced that she signed a new publishing agreement with Sony to administer Ron's song catalogue (the "Administration Agreement"), purportedly in reliance upon the Invalid Termination Notices.

**Plaintiffs' Good Faith Conduct**

48.     Lisa executed her scheme to commandeer Aurora's majority share of Ron's Copyright Termination Interest and usurp the Reverted Copyrights in total secret from Julie and Mark.

49.     In or around 2018, Lisa's half-siblings (Julie and Mark's step-siblings) warned Julie and Mark that Lisa was up to something regarding Ron's song catalogue, which prompted Julie and Mark to investigate.

50.     In or around early 2019, Julie and Mark discovered the existence of the Invalid Termination Notices via the U.S. Copyright Office's records.

51.     In or around March 2019, Julie and Mark, through their representative, notified Defendant Sony that the Invalid Termination Notices were invalid, unenforceable, and ineffective.  Defendant Sony advised that Lisa wanted to contact Julie and Mark's representative to resolve any dispute.

52.     In or around September 2019, Julie and Mark's representative followed up with Defendant Sony because Lisa still had not contacted them.

53.      In or around October 2019, Defendant Sony introduced Julie and Mark's representative and Lisa via e-mail as parties who may represent the Ron Miller interest in songs with respect to U.S. termination rights, so that they could reach a resolution regarding those rights.  As a result, Julie and Mark's representative and Lisa scheduled an in-person meeting for October 25, 2019.

54.     After meeting in October 2019 to explore a potential resolution of the parties' dispute over the Invalid Termination Notices and Reverted Copyrights, Julie and Mark's representative and Lisa continued to exchange e-mails over the subsequent months, in which Lisa expressed an openness to continue discussions or

Frankfurt Kurmit Klein+Selz PC
2029 Century Park East, Suite 2500N
Los Angeles, California 90067
P (310) 579-9600

an informal resolution, culminating in another in-person meeting scheduled for on or around March 4, 2020.

55.     Upon information and belief, when Julie and Mark's representative met with Lisa in or around March 2020, Lisa became obstinate, refusing to answer basic questions or provide documents about the Invalid Termination Notices, including the alleged basis for Lisa's authority to send the Invalid Termination Notices on behalf of Aurora.

56.     On May 2, 2022, Lisa wrote to Julie contending that Defendant Songtrust (apparently doing business as LDM Publishing) holds the majority interest in the Copyright Termination Interest and the purported Reverted Copyrights under the Invalid Termination Notices.  Lisa further contended that, as manager of Songtrust, Lisa had the right to collect revenue generated from the Reverted Copyrights on behalf of Julie, and that Julie is not entitled to be paid directly for any revenue derived from the Reverted Copyrights.

57.     On May 3, 2022, Sony represented to counsel for Julie and Mark that Lisa represented and warranted to Sony that Lisa's "publishing vehicle" controlled more than 50% of the Copyright Termination Interest and had the right to exploit the Reverted Copyrights, including to enter into the Administration Agreement.  Sony also stated that it had no objection to providing Julie with a copy of the Administration Agreement, but the Administration Agreement contained a confidentiality provision that required Lisa's consent, which she refused to give.

58.     On May 3, 2022, Sony further acknowledged that, if the Invalid Termination Notices were enforceable, Julie and Mark are still entitled to 12.5% of the receipts generated under the Administration Agreement, and Sony stated that it had no objection to paying Julie and Mark their shares directly.  However, Sony further represented that the Administration Agreement required Sony to pay Lisa's publishing vehicle and Lisa refused to alter the Administration Agreement, insisting that she receive all monies directly, purportedly on behalf of the other Copyright

Termination Interest holders—Julie, Mark, and Angel—even though Julie and Mark have never received a penny from Lisa.

59.     Julie and Mark have repeatedly requested a copy of the Administration Agreement from Lisa.  To date, Lisa has refused.

60.     Julie and Mark have repeatedly requested that Lisa provide a full and detailed accounting of all monies and/or royalties relating to Lisa's exploitation of the Reverted Copyrights.  To date, Lisa has refused.

61.     Julie and Mark have repeatedly requested that—to the extent any of the Invalid Termination Notice are enforceable—Sony pay Julie and Mark's share of royalties from exploitation of the Reverted Copyrights directly to Julie and Mark, respectively.  To date, Lisa has refused.

62.     Julie and Mark have repeatedly demanded that Lisa cease taking any further action with respect to exploitation of the purported Reverted Copyrights under the Invalid Termination Notices.  To date, Lisa has refused.

63.     Upon information and belief, Defendants Lisa, Songbook, and Songtrust have collected, and continue to collect, royalty payments from Defendant Sony and others in connection with the exploitation of the Reverted Copyrights to which Julie and Mark are entitled.  To date, Julie and Mark have not received, from Defendants, or any other person or entity, any of Julie or Mark's royalty payments from the exploitation of the Reverted Copyrights, despite their entitlement to such royalty payments under the 1976 Copyright Act.

## FIRST CLAIM FOR RELIEF

**(Declaratory Relief re:  Invalid Termination Notices against All Defendants)**

64.     Plaintiffs repeat, reiterate, and incorporate by reference the allegations contained in the paragraphs above as though fully set forth herein.

65.     An actual and substantial controversy exists between Plaintiffs and Defendants.  Plaintiffs contend that the Invalid Termination Notices, and each of them, are invalid, ineffective, and unenforceable because:

a.      Lisa had no right to exercise any Copyright Termination Interest on behalf of Aurora, including because Lisa unduly influenced Aurora into issuing the Invalid Termination Notices and/or Aurora lacked capacity, and Lisa lacked authority on behalf of Aurora, to issue Invalid Termination Notices; and,

b.      the Invalid Termination Notices fail to comply with the statutory requirements under the 1976 Copyright Act.

66.    Plaintiffs contend that, because the Invalid Termination Notices, and each of them, are invalid, ineffective, and unenforceable, Defendants Lisa, Songbook, and Songtrust had no right to exploit any Reverted Copyrights obtained based upon the Invalid Termination Notices, including but not limited to, by entering into the Administration Agreement with Defendant Sony such that the Administration Agreement is invalid, ineffective, and unenforceable.

67.    Upon information and belief, Defendants, and each of them, dispute each of Julie and Mark's contentions hereinabove.

68.    Julie and Mark desire a judicial determination of the validity and effectiveness of the Invalid Termination Notices, the Administration Agreement, and the parties' respective rights and obligations under the 1976 Copyright Act.

69.    This controversy between Plaintiffs and Defendants, having adverse legal interests, is of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

## SECOND CLAIM FOR RELIEF

## (Declaratory Relief re: Payment of Royalties against Defendants Lisa, Songbook, and Songtrust)

70.    Plaintiffs repeat, reiterate, and incorporate by reference the allegations contained in the paragraphs above as though fully set forth herein.

71.    Alternatively, in the event the Invalid Termination Notices are somehow valid, effective, and enforceable, another actual and substantial controversy exists between Plaintiffs and Defendants.  Plaintiffs contend that Lisa

Frankfurt Kurmit Klein+Selz PC
2029 Century Park East, Suite 2500N
Los Angeles, California 90067
P (310) 579-9600

1  has no right to receive or divest Julie and Mark's proper share of royalties generated

2  by the Reverted Copyrights, such that Julie and Mark are entitled to direct

3  accounting and payment by Defendant Sony.

4       72.    Upon information and belief, Defendants Lisa, Songbook, and

5  Songtrust have collected, and continue to collect, royalty payments from Defendant

6  Sony and others in connection with the exploitation of the Reverted Copyrights to

7  which Julie and Mark are entitled.  Upon information and belief, Defendant Sony

8  has exploited, and continues to exploit, the Reverted Copyrights such that there are

9  ongoing and continuing accounting and payments of royalties to Defendants Lisa,

10  Songbook, and Songtrust based upon the exploitation of the Reverted Copyright.

11       73.    Upon information and belief, Defendants Lisa, Songbook, and

12  Songtrust, and each of them, dispute each of Julie and Mark's contentions

13  hereinabove.

14       74.    Julie and Mark desire a judicial determination of the parties' respective

15  rights and obligations under the 1976 Copyright Act, particularly Julie and Mark's

16  rights to direct accounting and payment of royalties generated from the Reverted

17  Copyrights.

18       75.    This controversy between Plaintiffs and Defendants Lisa, Songbook,

19  and Songtrust, and each of them, having adverse legal interests, is of sufficient

20  immediacy and reality to warrant the issuance of a declaratory judgment.

21  **THIRD CLAIM FOR RELIEF**

22  **(Accounting against Defendants Lisa, Songbook, and Songtrust)**

23       76.    Plaintiffs repeat, reiterate, and incorporate by reference the allegations

24  contained in the paragraphs above as though fully set forth herein.

25       77.    In the event the Invalid Termination Notices are somehow valid,

26  effective, and enforceable, a relationship exists between Plaintiffs and Defendants

27  Lisa, Songbook, and Songtrust that requires an accounting.

28       78.    By operation of the 1976 Copyright Act, Julie and Mark are Ron's

Frankfurt Kurmit Klein+Selz PC
2029 Century Park East, Suite 2500N
Los Angeles, California 90067
P (310) 579-9600

statutory heirs and co-owners of the Copyright Termination Interest and Reverted Copyrights.  As co-owner of the Reverted Copyrights in Ron's song catalogue, Defendants Lisa, Songbook, and Songtrust, as well as any other entities controlled by Lisa exploiting the Reverted Copyrights, owe a duty to account to the other co-owners, including Julie and Mark, for any profits realized from the licensing and/or use of the Reverted Copyrights.

79.   Plaintiffs allege upon information and belief that Defendants Lisa, Songbook, and Songtrust have collected and continue to collect all revenue, including royalty payments under the Administration Agreement, derived from exploitation of the Reverted Copyrights.

80.   Upon information and belief, Defendant Sony has exploited, and continues to exploit, the Reverted Copyrights such that there are ongoing and continuing accounting and payments of royalties to Defendants Lisa, Songbook, and Songtrust based upon the exploitation of the Reverted Copyright.

81.   Yet, Defendants failed to provide any accounting of monies and/or royalties relating to the Reverted Copyrights, despite Julie and Mark's request for such information.  Due to the misconduct by Defendants Lisa, Songbook, and Songtrust alleged herein, Julie and Mark are unable to determine the amount of monies and/or royalties due to Plaintiffs and improperly withheld by Defendants Lisa, Songbook, and Songtrust.

82.   The balance that is due to Julie and Mark from exploitation of the Reverted Copyrights by Defendants Lisa, Songbook, and Songtrust can be ascertained only by an accounting.

83.   For the foregoing reasons, Plaintiffs pray for an accounting of all monies, profits, and royalties relating to the Reverted Copyrights.

## FOURTH CLAIM FOR RELIEF

### (Constructive Trust Against All Defendants)

84.   Plaintiffs repeat, reiterate, and incorporate by reference the allegations

1    contained in the paragraphs above as though fully set forth herein.

2         85.    Plaintiffs are entitled to a share of the royalties derived from

3    exploitation of the Reverted Copyrights.

4         86.    Upon information and belief, Defendants have collected, and continue

5    to collect, revenues from the exploitation of the Reverted Copyrights based upon the

6    Invalid Termination Notices.

7         87.    Upon information and belief, Defendant Sony has exploited, and

8    continues to exploit, the Reverted Copyrights such that there are ongoing and

9    continuing accounting and payments of royalties to Defendants Lisa, Songbook, and

10   Songtrust based upon the exploitation of the Reverted Copyright.

11        88.    Plaintiffs request that the court impose a constructive trust over the

12   revenue derived from the exploitation of the Reverted Copyrights for the benefit of

13   Plaintiffs.

14        89.    Defendants should be declared by this Court to be involuntary trustees

15   of a constructive trust of all property which they received arising out of the Reverted

16   Copyrights.

17        90.    Plaintiffs have no adequate remedy at law.

18                              **PRAYER FOR RELIEF**

19        WHEREFORE, Plaintiffs Julie Moss and Mark Miller respectfully request

20   that this Court enter judgment in their favor and against Defendants, and each of

21   them, as follows:

22        1.     On the first cause of action for declaratory relief,

23             a.    for a judicial declaration that the Invalid Termination Notices,

24   and each of them, are invalid, ineffective, and unenforceable; and,

25             b.    for a judicial declaration that Defendants Lisa, Songbook, and

26   Songtrust, and any other entity controlled by Lisa, had and have no right to exploit

27   the purported Reverted Copyrights purportedly secured by the Invalid Termination

28   Notices, including but not limited to that the Administration Agreement with

Frankfurt Kurnit Klein+Selz PC
2029 Century Park East, Suite 2500N
Los Angeles, California 90067
P (310) 579-9600

Frankfurt Kurnit Klein + Selz pc
2029 Century Park East, Suite 2500N
Los Angeles, California 90067
P (310) 579-9600

1    Defendant Sony is invalid, ineffective, and unenforceable.

2        2.      On the second cause of action for declaratory relief, alternatively, in the

3    event the Invalid Termination Notices, and each of them are not invalid, ineffective

4    and unenforceable, for a judicial declaration that Defendants Lisa, Songbook, and

5    Songtrust, and any other entity controlled by Lisa, had and have no right to receive

6    or divest Plaintiffs' proper share of royalties generated by the Reverted Copyrights,

7    including but not limited to that Plaintiffs are entitled to direct accounting and

8    payment by Defendant Sony of all monies generated under the Administration

9    Agreement;

10       3.      On the third cause of action for an accounting,

11           a.      for an order directing an equitable accounting of all monies or

12   things of value received by Defendants Lisa, Songbook, Songtrust, or any other

13   entity controlled by Lisa, derived from exploitation of the Reverted Copyrights;

14           b.      in the event the Invalid Termination Notices, and each of them

15   are not invalid, ineffective and unenforceable, for restitution by Defendants Lisa,

16   Songbook, Songtrust, or any other entity controlled by Lisa, to Julie in an amount

17   according to the accounting together with pre- and post-judgment interest thereon at

18   the maximum rate permitted by law in an amount to be proven at trial;

19       4.      On the fourth cause of action for a constructive trust, for imposition of

20   a constructive trust to which Defendants hold for Plaintiffs' benefit Plaintiffs' share

21   of monies derived from exploitation of the Reverted Copyrights;

22       5.      For all provisional and permanent equitable relief prohibiting

23   Defendants from taking unilateral action or divesting monies with respect to the

24   Reverted Copyrights, including collecting and/or dissipating royalty payments and

25   monies to which Plaintiffs are entitled;

26       6.      For costs of this action, including reasonably attorneys' fees, as

27   authorized by the 1976 Copyright Act; and,

28       7.      For such other and further relief in favor of Plaintiffs as the Court

1    deems just and proper.

2

3    DATED:  September 7, 2023          FRANKFURT KURNIT KLEIN + SELZ PC

4

5

6    By:  _____/s/ Tiffany R. Caterina_____

7         Joseph R. Taylor
         Tiffany R. Caterina

8         Chaitra G. Betageri
         *Attorneys for Plaintiffs Julie Moss and*

9         *Mark Miller*

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **DEMAND FOR JURY TRIAL**

Plaintiffs hereby demands a trial by jury.

DATED:  September 7, 2023          FRANKFURT KURNIT KLEIN + SELZ PC


By:   _____*/s/ Tiffany R. Caterina*_____
      Joseph R. Taylor
      Tiffany R. Caterina
      Chaitra G. Betageri
      *Attorneys for Plaintiffs Julie Moss and*
      *Mark Miller*