UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 23-7424-GW-PDx | Date | December 15, 2023 |
|---|---|---|---|
| Title | *Julie Moss, et al. v. Lisa Dawn Miller, et al.* | | |

| Present: The Honorable | GEORGE H. WU, UNITED STATES DISTRICT JUDGE | | |
|---|---|---|---|
| Javier Gonzalez | None Present | | |
| Deputy Clerk | Court Reporter / Recorder | Tape No. | |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: | | |
| None Present | None Present | | |

**PROCEEDINGS:** IN CHAMBERS - TENTATIVE RULING ON DEFENDANTS LISA DAWN MILLER, RON MILLER SONGBOOK PUBLISHING, LLC, AND RON MILLER LEGACY SONGTRUST, LLC'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(B)(6) [23]; and DEFENDANT SONY MUSIC PUBLISHING (US) LLC'S MOTION TO DISMISS PURSUANT TO FRCP 12(b)(6) [27]

Attached hereto is the Court's Tentative Ruling on Defendants' Motions [23, 27] set for hearing on December 18, 2023 at 8:30 a.m.

: 

Initials of Preparer    JG

<u>*Moss, et al. v. Miller, et al.*</u>, Case No. 2:23-cv-7424 GW-(PDx)
Tentative Ruling on Motion to Dismiss for Failure to State a Claim Pursuant to Federal Rule of Civil Procedure 12(b)(6)

**I. Introduction**

Julie Moss and Mark Miller (collectively, "Plaintiffs") sued Lisa Dawn Miller ("Lisa"), Ron Miller Songbook Publishing LLC ("RM Publishing"), Ron Miller Legacy Songtrust LLC ("RM Legacy"), and Sony Music Publishing (US) LLC ("Sony") on September 7, 2023, asserting four claims for relief: 1) declaratory relief re: invalid copyright termination notices; 2) declaratory relief re: direct payment; 3) accounting; and 4) constructive trust. Lisa, RM Publishing and RM Legacy have moved to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), as has – separately – Sony. As discussed below, one of the issues raised by these motions is the governing statute of limitations.[1] A discussion of the allegations relevant to that topic follows.

This case involves copyright "termination interests."[2] The Complaint alleges that Ron Miller ("Ron") died in 2007 and that, at that time, his estranged wife Aurora Miller ("Aurora") – Lisa's mother – became entitled to a 50% interest in Ron's copyright termination interests with respect to copyrights he had in songs he had written. *See* Complaint ¶¶ 3, 22-23. Lisa and each of Ron's three other children – Plaintiffs are two of those three – each became entitled to a 12.5% interest in Ron's copyright termination interests at that same time. *See id.* ¶¶ 3, 19, 23.

According to the Complaint, Lisa improperly influenced Aurora for the purpose of using their combined majority interest in the copyright termination interests to execute numerous notices of copyright termination. *See id.* ¶¶ 4, 20, 26-27.[3] The notices of

---

[1] Lisa, RM Publishing and RM Legacy make the statute of limitations a centerpiece of their motion. In addition to adding its own independent arguments for dismissal, Sony joined in that argument. *See* Docket No. 27, at 1:11-14 & 7 n.4.

[2] With the exception of works-made-for-hire, grants of a transfer or license of a copyright, or of any right under a copyright, otherwise than by will, are subject to termination under various conditions. *See* 17 U.S.C. §§ 203(a), 304(c).

[3] Where an author is deceased, persons who "own and are entitled to exercise a total of more than one-half" of that author's termination interest may effect such a termination. *See* 17 U.S.C. §§ 203(a)(1), 304(c)(1); *see also id.* §§ 203(a)(2), 304(c)(2) (identifying individuals who own deceased author's termination

termination that Lisa and Aurora executed occurred from August 2009 through April 2016, with a number allegedly executed after Aurora lacked the capacity to understand, consent to, or execute legal documents, and two allegedly executed after Aurora was in a coma and "essentially brain dead." *See id.* ¶¶ 27(a)-(m), 28, 29(a)-(n), 30, 31(a)-(b), 32(a)-(e), 33(a)-(b), 34, 36, 38 & Exhs. 1-36, 38-39. Aurora died on June 15, 2016. *See id.* ¶ 40.

In or around 2018, Lisa's half-siblings (Plaintiffs' step-siblings) warned Plaintiffs "that Lisa was up to something regarding Ron's song catalogue, which prompted [Plaintiffs] to investigate." *Id.* ¶ 49. "In or around early 2019, [Plaintiffs] discovered the existence of the Invalid Termination Notices via the U.S. Copyright Office's records." *Id.* ¶ 50.[4] "In or around March 2019, [Plaintiffs], through their representative, notified . . . . Sony that the Invalid Termination Notices were invalid, unenforceable, and ineffective. . . . . Sony advised that Lisa wanted to contact [Plaintiffs'] representative to resolve any dispute." *Id.* ¶ 51. Lisa eventually signed a publishing deal with Sony referred to in the Complaint as the "Administration Agreement," *see id.* ¶¶ 5, 47, and Lisa began releasing her own re-recordings of Ron's songs in or around April 2019, *see id.* ¶ 42.

In or around October 2019, Sony introduced Plaintiffs' representative and Lisa via e-mail so that they could reach a resolution regarding Ron's U.S. termination rights, and Plaintiffs' representative and Lisa scheduled a meeting for October 25, 2019. *See id.* ¶ 53. After that meeting, Plaintiffs' representative and Lisa continued to exchange e-mails over the subsequent months, with Lisa expressing an openness to continue discussions or an informal resolution, with another meeting scheduled for on or around March 4, 2020. *See id.* ¶ 54. At that meeting, "Lisa became obstinate, refusing to answer basic questions or provide documents about the Invalid Termination Notices, including the alleged basis for Lisa's authority to send the Invalid Termination Notices on behalf of Aurora." *Id.* ¶ 55.

## II. Applicable Procedural Standards

---

interest); *see generally* 3 Melville B. Nimmer and David Nimmer, Nimmer on Copyright § 11.03[A][2][b] (Matthew Bender, Rev. Ed.).

[4] Terminations are effected in writing giving notice to the grantee or grantee's successor in title, with a copy of the notice required to be recorded in the Copyright Office before the effective date of termination. *See* 17 U.S.C. §§ 203(a)(4)(A), 304(c)(4)(A).

2

Under Rule 12(b)(6), a court must (1) construe the complaint in the light most favorable to the plaintiff, and (2) accept all well-pleaded factual allegations as true, as well as all reasonable inferences to be drawn from them. *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir.), *amended on denial of reh'g*, 275 F.3d 1187 (9th Cir. 2001); *Pareto v. F.D.I.C.*, 139 F.3d 696, 699 (9th Cir. 1998). The court need not accept as true "legal conclusions merely because they are cast in the form of factual allegations." *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003).

Dismissal pursuant to Rule 12(b)(6) is ordinarily proper only where there is either a "lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990); *Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1121-22 (9th Cir. 2008); *see also Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 561-63 (2007) (dismissal for failure to state a claim does not require the appearance, beyond a doubt, that the plaintiff can prove "no set of facts" in support of its claim that would entitle it to relief). However, in that respect, a plaintiff must also "plead 'enough facts to state a claim to relief that is plausible on its face.'" *Johnson*, 534 F.3d at 1122 (quoting *Twombly*, 550 U.S. at 570); *see also William O. Gilley Enters., Inc. v. Atlantic Richfield Co.*, 588 F.3d 659, 667 (9th Cir. 2009) (confirming that *Twombly* pleading requirements "apply in all civil cases"). A complaint does not "suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 556). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

A claim may also be dismissed under Rule 12(b)(6) on the ground that it is barred by the applicable statute of limitations, but only when 'the running of the statute is apparent on the face of the complaint.'" *Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 969 (9th Cir. 2010) (quoting *Huynh v. Chase Manhattan Bank*, 465 F.3d 992, 997 (9th Cir. 2006)). In this respect, "'a complaint cannot be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts that would establish the timeliness of the claim.'" *Von Saher*, 592 F.3d at 969 (quoting *Supermail*

3

*Cargo, Inc. v. United States*, 68 F.3d 1204, 1206 (9th Cir. 1995)).

### III. Analysis

Plaintiffs' first claim for relief is a declaratory relief claim asserting that the 38 purportedly "Invalid Termination Notices" are "invalid, ineffective, and unenforceable" because Lisa did not have a right to exercise them on behalf of Aurora and because the notices failed to comply with the statutory requirements under the 1976 Copyright Act. *See* Complaint ¶ 65(a)-(b). Contingent upon the correctness of that assertion, Plaintiffs then contend that Lisa, RM Publishing and RM Legacy had no right to exploit the copyrights, including by entering into the "Administration Agreement" with Sony, making that Administration Agreement "invalid, ineffective, and unenforceable." *Id.* ¶ 66. Thus, the entirety of Plaintiffs' first claim for relief is dependent upon their belief that the termination notices were invalid, ineffective, and unenforceable. Plaintiffs assert that each and all of the defendants dispute the assertions made in paragraphs 65(a), 65(b) and 66 of the Complaint. *See id.* ¶ 67. Plaintiffs "desire a judicial determination of the validity and effectiveness of the Invalid Termination Notices, the Administration Agreement, and the parties' respective rights and obligations under the 1976 Copyright Act." *Id.* ¶ 68.

Courts have applied the three-year statute of limitations found in 17 U.S.C. § 507(b) to claims based upon copyright termination interests. *See Waite v. UMG Recordings, Inc.*, 450 F.Supp.3d 430, 435 (S.D.N.Y. 2020); *Scorpio Music (Black Scorpio) S.A. v. Willis*, No. 11cv1557 BTM(RBB), 2013 WL 790940, *2 (S.D. Cal. Mar. 4, 2013). That statute specifically states that "[n]o civil action shall be maintained under the provisions of this title unless it is commenced within three years after the claim accrued." 17 U.S.C. § 507(b). Plaintiffs do not take the position that any other statute of limitation applies to their first cause of action. Thus, if Plaintiffs' first cause of action accrued more than three years before they filed their Complaint on September 7, 2023, it is time-barred.

In the Ninth Circuit, ownership claims accrue "when plain and express repudiation of [ownership] is communicated to the claimant, and are barred three years from the time of repudiation." *Zuill v. Shanahan*, 80 F.3d 1366, 1369 (9th Cir. 1996); *compare Waite*, 450 F.Supp.3d at 435 ("'An ownership . . . claim accrues only once,

4

when a reasonably diligent plaintiff would have been put on inquiry as to the existence of a right.'") (quoting *Kwan v. Schlein*, 634 F.3d 224, 228 (2d Cir. 2011)) (omitting internal quotation marks). Claims tied to termination-notice issues are treated as ownership claims, and are thus subject to that repudiation-based focus. *See Scorpio Music*, 2013 WL 790940, at *2-3.[5]

In this case, the Complaint itself reveals that, *before* September 7, 2020 (i.e., three years before Plaintiffs filed their Complaint), Plaintiffs had: (1) been warned by Lisa's half-siblings "that Lisa was up to something regarding Ron's song catalogue, which prompted [Plaintiffs] to investigate;" (2) discovered the existence of the Invalid Termination Notices via the U.S. Copyright Office's records;" (3) notified Sony that the termination notices "were invalid, unenforceable, and ineffective"; and (4) after months of attempting to reach a resolution with Lisa, been met with behavior from Lisa where she "became obstinate, refusing to answer basic questions or provide documents about the Invalid Termination Notices, including the alleged basis for Lisa's authority to send the Invalid Termination Notices on behalf of Aurora." Complaint ¶¶ 49-51, 53-55.

Plaintiffs insist that this was not enough to commence the limitations clock ticking on their first claim for relief because they believe that the law requires any repudiation to have been communicated to them *by* Lisa, RM Publishing and RM Legacy, not simply that Plaintiffs "acquired information that led to a potential ownership dispute." Docket No. 30, at 12:13-15. They cite no controlling authority for that purported rule (though they assert its existence immediately after arguing that Lisa, RM Publishing and RM Legacy are wrong in their reading of *Zuill*).

*Zuill* does not appear to support Plaintiffs' belief in any *requirement* for how the necessary repudiation is communicated to a potential plaintiff. *Zuill*'s conclusion is stated plainly: "We conclude that claims of co-ownership . . . accrue when plain and express repudiation of co-ownership is communicated to the claimant, and are barred three years from the time of repudiation." 80 F.3d at 1369; *see also id.* at 1370-71 ("It is inequitable to allow the putative co-owner to lie in the weeds for years after his claim has

---

[5] Plaintiffs obviously agree that repudiation is the determining factor for accrual of their first cause of action, even if they disagree with how that principle should be applied here (as discussed *infra*). *See* Docket No. 30, at 12:3-16.

5

been repudiated . . . ."). *Zuill* clearly could have concluded that the rule only applied when the repudiator him/her/itself communicates the repudiation. The facts of *Zuill* arguably would have supported such a rule. But, plainly, the decision said no such thing.

Plaintiffs believe that when exactly the repudiation occurred is also a question of fact inappropriate for resolution on a motion to dismiss/Rule 12(b)(6) motion. That may be true in certain cases. But here, again, Plaintiffs' Complaint admits that they: (1) were aware of the "Invalid Termination Notices," (2) informed Sony that the notices were invalid, and (3) were met with Lisa's "obstinate" refusal to answer questions about the termination notice (and her authority in relation to them) – all well outside of three years before they filed this action. They clearly believed that what they believed to be the case about the ownership situation was repudiated at least as of the time of their communication to Sony that the termination notices were "invalid." There is no reason why repudiation, just like statutes of limitation defenses in general, cannot be resolved – in appropriate cases – based on what is apparent on the face of the Complaint. However they learned of the repudiation leading to their belief in the invalidity of the termination notices, that repudiation clearly was communicated to them prior to September 7, 2020.

Plaintiffs also respond in part by asserting that their first cause of action was equitably tolled until at least January 20, 2022, when Lisa, RM Publishing and RM Legacy publicly announced the Administration Agreement. Plaintiffs themselves assert that equitable tolling applies "where, despite due diligence, the complainant has been induced by his adversary's misconduct into allowing the filing deadline to pass." Docket No. 30, at 15:24-26. But Plaintiffs do not identify what "misconduct" – or even conduct – on the part of Lisa, RM Publishing and/or RM Legacy induced Plaintiffs not to take action. Moreover, to find Plaintiffs' inaction effectively excused in this regard, the Court would have to ignore Plaintiffs' own allegations both that they informed Sony in March 2019 that the termination notices were "invalid, unenforceable, and ineffective" and that, in their representative's latest interaction with Lisa, she had been "obstinate" and had refused requested information. Grounds for equitable tolling are not revealed on the face of the Complaint.

Plaintiffs could have taken action, but did not do so. Perhaps they did not because they had hopes an out-of-court resolution with Lisa could have been obtained. But there

6

is not even a hint that Lisa, RM Publishing and/or RM Legacy engaged in "misconduct" that gave Plaintiffs such a hope.  Possession of a hope does not excuse inaction.

Plaintiffs do not explain how they could possibly amend so as to change the impact of what they have already admitted about their pre-September 7, 2020 awareness/knowledge.  In fact, apart from their mere recognition of standards governing the topic of leave to amend, their only apparent *request* for leave to amend in connection with this motion corresponds only to their fourth claim for relief, *see* Docket No. 30, at 21 n.4, a count that this Court does not remark upon other than to indicate, *infra*, that it does not give this Court a basis for subject matter jurisdiction over the action.

Lisa, RM Publishing and RM Legacy argue that Plaintiffs' first cause of action is the only claim that gives this Court original subject matter jurisdiction, and the other three claims would be before the Court only by way of supplemental jurisdiction.[6]  With the first claim being dismissed so early in the action, the Court would decline supplemental jurisdiction over the remainder of the case – dismissing the other three claims without prejudice to Plaintiffs re-filing them in state court – if they are correct in that regard.  *See Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988) ("In the usual case in which all federal-law claims are eliminated before trial, the balance of factor to be considered under the pendent jurisdiction doctrine – judicial economy, convenience, fairness, and comity – will point toward declining to exercise jurisdiction over the remaining state-law claims."); *Sanford v. MemberWorks, Inc.*, 625 F.3d 550, 561 (9th Cir. 2010).

Plaintiffs, however, dispute that jurisdictional assertion.  They argue that the other claims *do* arise under the Copyright Act because those claims "require interpretation of the parties' rights and obligations under 17 U.S.C. §§ 203 and 304 and the application of federal principles to such interpretation."  Docket No. 30, at 7:23-26; *see also Scholastic Entm't, Inc. v. Fox Entm't Grp., Inc.*, 336 F.3d 982, 986 (9th Cir. 2003) (holding that district court is required to exercise jurisdiction under Copyright Act "if: (1) the complaint asks for a remedy expressly granted by the Copyright Act; (2) the complaint requires an interpretation of the Copyright Act; or (3) federal principles should control

---

[6] Complete diversity would not exist here.  *See* Complaint ¶¶ 8-11.

the claims"). However, although Plaintiffs *assert* that these other claims require interpretation of the nature and scope of their rights and obligations under the Copyright Act, the only rights and obligations they reference are their purported right to an accounting and their pursuit of a constructive trust. They point to no language or provisions of the Copyright Act that would give them a right to those remedies or that would require "interpretation." To the extent Plaintiffs have any such right, therefore, it would stem from a privately-negotiated agreement or some other source of law, such as state law. In short, they are incorrect – their other claims do not "arise under" the Copyright Act. *See Oddo v. Ries*, 743 F.2d 630, 633 & n.2 (9th Cir. 1984) (explaining that "a suit to bring the co-owner of a copyright to account does not fall within the district court's jurisdiction over actions arising under the copyright law," but instead "from 'equitable doctrines relating to unjust enrichment and general principles of law governing the rights of co-owners'") (quoting *Harrington v. Mure*, 186 F.Supp. 655, 657-58 (S.D.N.Y. 1960)); *Don Johnson Productions, Inc. v. Rysher Entm't, Inc.*, No. CV 09-1906 MMM (JCx), 2009 WL 1615982, *3-6 (C.D. Cal. June 8, 2009).

## IV. Conclusion

For the foregoing reasons, the Court will dismiss Plaintiffs' first cause of action, with prejudice due to the impact of the applicable statute of limitations. It will dismiss Plaintiffs' remaining claims without prejudice so that they may pursue them in another forum, if they so desire. The Court denies Sony's request for a fee award in connection with its motion.